16926

EDWARD C. BREEDEN, Petitioner, v. THE S. C. DEMOCRATIC
EXECUTIVE COMMITTEE, NEVILLE BENNETT, Chairman,
JAMES M. SMITH, Secretary, The Marlboro County Democratic
Executive Committee, J. J. EVANS, Chairman, EUGENE HUG-
GINS, Secretary, and ROY A. FREEMAN, Respondents

(84 S. E. (2d) 723)

*Messrs. James A. Spruill, Jr.,* of Cheraw, and *Robinson, Robinson & Dreher,* of Columbia, *for Petitioner,*

*Messrs. Leppard & Leppard,* and *S. Turner Clayton,* of Chesterfield, and *Willcox, Hardee, Houck & Palmer,* of Florence, *for Respondent, Roy A. Freeman,*

*Messrs. James A. Spruill, Jr.,* of Cheraw, and *Robinson, Robinson & Dreher,* of Columbia, *for Petitioner,*

November 10, 1954.

Oxner, Justice.

This is a proceeding, under a writ of certiorari, to review the action of the State Democratic Executive Committee in refusing to declare petitioner, Edward C. Breeden, the party nominee for auditor of Marlboro County, and in declaring respondent Roy A. Freeman the nominee for said office.

In the first primary held on June 8, 1954, there were three candidates for the party nomination for the office of auditor of Marlboro County, but neither received a majority of the votes cast. Breeden and Freeman, the two high men, ran over in a second primary held on June 22nd. The Marlboro County Democratic Executive Committee, apparently because of irregularities in the election, ordered a third primary which was held on July 27th, resulting in 1,786 votes for Breeden and 1,595 for Freeman, or a majority of 191 votes in favor of Breeden.

On July 29, 1954, the County Committee declared Breeden the party nominee. A protest was filed by Freeman on July 31st. He charged irregularities at certain boxes, and further alleged that Breeden had failed to file a post-election statement of expenses after the second primary and a pre-election statement before the third primary, as required by Section 23-265 of the 1952 Code. After denying in his return the allegations of irregularities at the polls, Breeden asserted that he had complied with Section 23-265 with reference to the filing of statements of expenditures, and further claimed that in any event there had been substantial compliance with this section.

The County Committee met on August 6th to hear and consider the protest of Freeman. At this meeting the Committee (1) defeated by a vote of 8 to 7 (with the chairman casting the deciding vote) a motion to confirm its nomination of Breeden; (2) adopted by the same margin a motion to rescind its previous action in declaring Breeden the nominee because of his failure to comply with the law in respect to filing statements of expenditures; (3) tabled a motion to declare Freeman the party nominee; (4) tabled a motion then made to declare Breeden the nominee; and (5) approved a motion that a committee of three be appointed to appear before the State Democratic Executive Committee for the purpose of obtaining advice "as to what procedure to follow now in this matter", which sub-com-

mittee was to report back to the County Committee on August 24th.

Within due time Breeden appealed to the State Democratic Executive Committee. There was no appeal by Freeman from the foregoing action of the County Committee. A hearing was held by the State Committee on August 25, 1954. The minutes disclose that the first motion made was one to declare Breeden the nominee upon the ground that he had substantially complied with Section 23-265 as to filing statements of expenditures. This motion was tabled. A motion was then made to refer the matter back to the County Committee with a request ·that another primary be held to determine the nominee. This motion was likewise tabled. The State Committee thereupon passed a motion declaring Freeman the party nominee.

At the outset we are confronted with Freeman's motion to dismiss this action for lack of jurisdiction. He challenges the jurisdiction of this Court to entertain this proceeding upon three grounds, which we shall now discuss.

(1) It is said that there is no showing that the public interests are involved, or that special grounds of emergency or other good reasons exist, as required by Rule 20 of this Court, for the assumption of original jurisdiction. Whether or not the petition for the writ of certiorari met the requirements of Rule 20 was for the determination, in the first instance, of the justice to whom the petition was presented. *King v. Aetna Insurance Co.,* 168 S. C. 84, 167 S. E. 12. He concluded that the petition fulfilled the requirements of Rule 20 and we are in full accord with that conclusion. The question of who is the nominee of the Democratic Party for the office of auditor of Marlboro County is not only of public interest, but one which should be promptly decided. To require petitioner to institute an action in the circuit court would unduly delay a final determination of the lawful nominee of the party.

(2) The contention is made that since in most counties, including Marlboro, the auditor is appointed by the Governor by and with the advice and consent of the Senate, Section 65-1741 of the 1952 Code, any action by this Court "would be an encroachment upon the powers of the legislative and executive branches of the Government", and any decision as to the party nominee would not be binding on the Governor, who would be at liberty to submit to the Senate the name of any person he desires. This position has been repeatedly rejected by this Court. *Young v. Sapp,* 167 S. C. 364, 166 S. E. 354; *McKnight v. Smith,* 182 S. C. 378, 189 S. E. 361; *Weston v. Williams,* 190 S. C. 112, 2 S. E. (2d) 381; *Salley v. Smith,* 201 S. C. 338, 23 S. E. (2d) 6. It is argued that the jurisdictional question now presented was not squarely raised in these cases, but we think it was necessarily before the Court. As pointed out in *McKnight v. Smith, supra* [182 S. C. 378, 189 S. E. 363], the fact that the primary election for the nomination of a candidate for a non-elective office is only a suggestion to the Governor of a suitable person to be appointed by him to such office "does not lessen the gravity of the question in the least." It is our conclusion that the parties are entitled to have determined and presented to the Governor the lawful nominee of the party so that he may have an opportunity, if he chooses, to honor the suggestion made by the electorate in the primary.

(3) Lastly, it is argued that the final decision in this matter rested with the State Democratic Executive Committee, and that the action of this tribunal cannot be reviewed by this Court in the absence of fraud or bad faith. Under our decisions primary elections have been given a legal status and it has long been recognized that any person interested in an election has a right to seek relief in the courts when the tribunals designated by the party for the decision of controversies have not proceeded according to law. *Salley v. Smith, supra,* 201 S. C. 338, 23 S. E. (2d) 6. While we have no right to review

disputed testimony, we are empowered to correct any error of law made by the party tribunals and may also examine the facts for the purpose of determining whether their findings have any evidentiary support. *Laney v. Baskin,* 201 S. C. 246, 22 S. E. (2d) 722, and cases therein cited. In the instant case the facts are undisputed. The questions presented are purely of a legal nature, which unquestionably this Court has jurisdiction to determine.

Having determined adversely to respondent Freeman the jurisdictional questions raised on his motion to dismiss this proceeding, we now turn to the merits of the controversy.

We have no hesitancy in concluding that the State Committee was without authority to declare Freeman the nominee. That question was not before it. As previously pointed out, Freeman did not appeal from the action of the County Committee in tabling a motion to declare him the nominee. The only question properly before the State Committee was whether the County Committee erred in rescinding its previous action declaring Breeden the nominee.

Breeden raises the further question that even if he were rendered ineligible for failure to file the proper pre-election statement of expenditures, it would not have the effect of electing Freeman, who did not receive a majority of the votes cast, but would only render the election nugatory. In other words, he says the majority vote received by him would prevent the election of Freeman. While we find it unnecessary to pass upon this contention, it may not be amiss to state that this position has strong support from courts in other jurisdictions. *Spruill v. Bateman,* 162 N. C. 588, 77 S. E. 768; *McKinney v. Barker,* 180 Ky. 526, 203 S. W. 303, L. R. A. 1918E, 581; 18 Am. Jur., Elections, Section 263; Annotation 133 A. L. R. page 319.

We shall now determine whether Breeden should be declared the nominee. He received a majority of the votes cast, but the County Committee refused to confirm his

nomination because of his failure to file statements of disbursements as required by Section 23-265 of the 1952 Code. This section requires "Every candidate in an election, general, special or primary," before he shall enter upon his campaign, to make and file the following pledge: "'I will not give money or use intoxicating liquors for the purpose of obtaining or influencing votes and that I shall, at the conclusion of the campaign and before the election, render to the clerk of court (or Secretary of State as the case may be), under oath, an itemized statement of all moneys spent or provided by me during the campaign for campaign purposes up to that time; and I further pledge that I will immediately after the election render an itemized statement, under oath, showing all further moneys spent or provided by me in said election.'" It is then stated: "A failure to comply with this provision shall render such election null and void, in so far as concerns the candidate who fails to file the statement herein required, but shall not affect the validity of the election of any candidate complying with this section. Such itemized statement and pledge shall be open to public inspection at all times." It is further provided in this section that any violation of the provisions of the pledge shall be a misdemeanor, and a punishment is fixed for such violation. Rule 16 of the Democratic Party of South Carolina makes the same requirement of a candidate.

The following facts are undisputed: Breeden duly filed the necessary pledge. He also filed with the Clerk of Court a proper pre-election statement of expenditures on the day before the first primary and a post-election statement the day after the first primary. He further filed a pre-election statement about 9:30 A. M. on the day of the second primary. No post-election statement was filed after the second primary. He filed no pre-election statement before the third primary but did file a post-election statement two days after the third primary and a supplemental one the next day.

Breeden contends that the County Committee erred as a matter of law in rescinding his nomination because: (1) The statute only requires one pre-election and one post-election statement. He contends that if more than one primary election is held, it is only necessary that a statement of expenditures be filed immediately before the first primary and immediately after the last primary. (2) The clause that, "A failure to comply with this provision shall render such election null and void, in so far as concerns the candidate who fails to file the statement herein required," should be construed as meaning a failure to file the pledge. He argues that it is only the failure to file the pledge which works forfeiture of office and that the only effect of failure to file a statement of expenditures is to subject the candidate to prosecution for a misdemeanor. (3) He has substantially complied with the statute, the provisions of which he says are merely directory and not mandatory.

We think the first ground must be sustained and that it is unnecessary to pass upon the second and third grounds. Under the decision of this Court in *Moore v. Griffin,* 81 S. C. 393, 62 S. E. 545, Breeden complied with the statute when he filed the required statement of expenditures the day before the first primary and a further post-election statement of expenditures shortly after the third primary. (It is true that this post-election statement was not filed "immediately" but there was substantial compliance. *Salley v. Smith, supra,* 201 S. C. 338, 23 S. E. (2d) 6.)

In *Moore v. Griffin,* decided in 1908, the Court was called upon to construe Act No. 473 of the Acts of 1905, 24 St. at L. 949 which is almost identical with the statute now under consideration. From the preliminary statement contained in our official reports, it appears that there were two primaries for the office of county supervisor. The contestant contended that although the contestee had received the majority of the votes cast in the second primary, he should not be declared elected because he had not filed before the sec-

ond primary an itemized sworn statement of his expenses and disbursements in connection with his campaign. It was conceded that such a statement was filed before the first primary. The Court held that the contestee had complied with the statute. The syllabus in the South Carolina Reports is as follows: "Under the statutes governing primary elections a candidate for a county office is not required to file with the clerk of court a sworn statement of expenses incurred between the first and second elections. If he file such statement before the first election it is sufficient."

We find it unnecessary to pass upon the second question stated in petitioner's brief.

There remains for consideration Freeman's contention that the action of the County and State Committees may have been based on his claim of irregularities at several boxes. Apparently these charges were not pressed but whether they were urged before the two committees or not, there is certainly nothing in the minutes of either to show that these charges were sustained or even considered. Certainly they had no part in the decision of either tribunal.

It follows that the State Committee erred in not sustaining Breeden's appeal. The judgment of the Court is that the action of the County Committee in rescinding the nomination of Breeden be set aside; that the action of the State Committee in declaring Freeman the nominee be, and the same is hereby, declared null and void; and that the action of the County Committee in first declaring Breeden the nominee be reinstated.

STUKES, TAYLOR and LEGGE, JJ., and G. BADGER BAKER, Acting Associate Justice, concur.