609 S.E.2d 500

Charlene TAYLOR, John Sketers and
Delores Wilson, Appellants,

v.

TOWN OF ATLANTIC BEACH ELECTION COMMISSION,
Irene Armstrong, Jake Evans, and Sherry Suttles,
Respondents.

No. 25940.

Supreme Court of South Carolina.

Heard Sept. 21, 2004.
Decided Feb. 14, 2005.
Rehearing Denied March 16, 2005.

---

Ernest A. Finney, Jr., of the Finney Law Firm, of Sumter, Emma Ruth Brittain and Matthew R. Magee of Thompson & Henry, P.A., of Myrtle Beach, and Helen T. McFadden, of Kingstree, for Appellants.

John C. Zilinsky, of Conway, for Respondents Irene Armstrong, Jake Evans, and Sherry Suttles.

Louis Milton Cook, of Louis M. Cook & Associates, of North Myrtle Beach, and Darryl Caldwell, of Duff Turner White & Boykin, of Columbia, for Respondent Town of Atlantic Beach Election Commission.

Justice BURNETT:

This is an election protest. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Municipal Election Commission of the Town of Atlantic Beach (the Commission) certified the results of a nonpartisan election held November 4, 2003: Irene Armstrong, mayor; Jake Evans, town council; Sherry Suttles, town council.[1]

On November 5, 2003, Charlene Taylor, John Sketers, and Delores Wilson (Appellants) filed letters contesting the election results. The Commission reviewed challenged ballots at a

---

1. The certified results of the November 4, 2003, election were:

*Mayor's seat:* Irene Armstrong, 104; Charlene Taylor, 18; Josephine Isom, 34, Gloria Lance, 13.

*Town council seat* (two to be elected): Jake Evans, 110; Sherry Suttles, 65; Retha Pierce, 52; Kenneth McIver, 24; William Cain, 3; Erica Lewis, 2; Russell Skeeters, 17; John Sketers, 17; Delores Wilson, 16; Russell Reave, 1.

Respondents have not begun serving in their respective positions pending the outcome of this appeal. *See* S.C.Code Ann. § 5–15–120 (2004) ("Newly elected officers shall not be qualified until at least forty-eight hours after the closing of the polls and in the case a contest is finally filed the incumbents shall hold over until the contest is finally determined."); S.C.Code Ann. § 5–15–140 (2004) ("notice of appeal shall act as a stay of further proceedings pending the appeal").

hearing on November 6, 2003, and denied the candidates' protests following a separate hearing on November 8, 2003.

On appeal the circuit court affirmed the Commission's decision. This appeal is pursuant to S.C.Code Ann. § 14–8–200(b)(5) (Supp.2003) and Rule 203(d)(1)(E), SCACR.

## ISSUES

1. Did the circuit court err in refusing to remand the case to the Commission for explicit rulings and a more definitive written order on allegations raised by Appellants at a hearing before the Commission?

2. Did the circuit court err in affirming the Commission's denial of the election protests because the constitutional and statutory right to a secret ballot of those who voted by challenged ballot was violated?

3. Are Appellants' remaining issues preserved for appellate review?

## STANDARD OF REVIEW

In municipal election cases, we review the judgment of the circuit court only to correct errors of law. Our review does not extend to findings of fact unless those findings are wholly unsupported by the evidence. We will employ every reasonable presumption to sustain a contested election, and will not set aside an election due to mere irregularities or illegalities unless the result is changed or rendered doubtful. In the absence of fraud, a constitutional violation, or a statute providing that an irregularity or illegality invalidates an election, we will not set aside an election for a mere irregularity. *E.g. Broadhurst v. City of Myrtle Beach Election Commn.*, 342 S.C. 373, 379, 537 S.E.2d 543, 546 (2000); *George v. Mun. Election Commn. of Charleston*, 335 S.C. 182, 186, 516 S.E.2d 206, 208 (1999); *Sims v. Ham*, 275 S.C. 369, 271 S.E.2d 316 (1980); *May v. Wilson*, 199 S.C. 354, 19 S.E.2d 467 (1942); *State v. Jennings*, 79 S.C. 246, 60 S.E. 699 (1908). "Voters who have done all in their power to cast their ballots honestly and intelligently are not to be disfranchised because of an irregularity, mistake, error, or even wrongful act, of the officers charged with the duty of conducting the election, which does not prevent a fair election and in some way affect

the result." *Berry v. Spigner,* 226 S.C. 183, 190, 84 S.E.2d 381, 384 (1954) (internal quotes omitted).

## LAW AND ANALYSIS

### 1. DENIAL OF REMAND TO COMMISSION

The Commission by letter advised Appellants had not proved the late opening of the polls affected the outcome of the election; Appellant Taylor's "allegations of fraud and bribery were not proven"; and Appellant Sketers' "allegations of ballots being seen and ballots being removed from the voting place were not proven." [2] The circuit court affirmed.

Appellants contend the circuit court erred in denying their request to remand the case to the Commission for more definitive findings and rulings in a written order on issues they had raised before the Commission. Appellants acknowledge an election protest generally is limited to allegations contained in the written notice of protest. They urge the Court to require some degree of concomitant specificity by the election commission which hears the protest; otherwise, it is difficult or impossible for circuit or appellate courts to properly review the decision. Appellants do not suggest such orders be required to contain formal findings of fact or conclusions of law similar to those demanded of lower courts or government agencies in other settings. Appellants ask the Court to either remand the case to the Commission or set aside the election for reasons set forth in their appeal.

---

**2.** Appellants raised the following issues in their notice of contest letters to the Commission:

*Appellant Taylor* (including attached statement of poll watcher Patricia Bellamy): fraudulent registration, bribery of voters, late opening of voting site, loud or boisterous behavior at the poll caused voters to stay away, improper dismissal of challenges, and improper assistance provided to voters by a poll watcher.

*Appellant Sketers:* late opening of voting site, ballots were allowed to be seen, ballots were removed from the voting place, improper assistance was given to voters, intimidation of his poll watcher when she tried to challenge voters, and loud or boisterous behavior at the poll caused voters to stay away.

*Appellant Wilson:* late opening of voting site, corrupt conduct, and excessive arguing over challenges caused voters to stay away.

Respondents assert the circuit court did not err in refusing to remand the case to the Commission for further review. They argue there is no need to require greater specificity or clarity in decisions issued by election commissions, and urge the Court to reject Appellants' call for a new standard for such orders.

There was no right to contest an election under the common law. *Broadhurst*, 342 S.C. at 383, 537 S.E.2d at 548. "The right to contest an election exists only under the [state] constitutional and statutory provisions, and the procedure proscribed by statute must be strictly followed." *Taylor v. Roche*, 271 S.C. 505, 509, 248 S.E.2d 580, 582 (1978); *see also* S.C. Const. art. II, 10 ("General Assembly shall . . . establish procedures for contested elections, and enact other provisions necessary to the fulfillment of and integrity of the election process").

Statutes applicable to municipal elections provide:

Within forty-eight hours after the closing of the polls, any candidate may contest the result of the election as reported by the managers by filing a written notice of such contest together with a concise statement of the grounds therefor with the Municipal Election Commission. Within forty-eight hours after the filing of such notice, the Municipal Election Commission shall, after due notice to the parties concerned, *conduct a hearing on the contest, decide the issues raised, file its report together with all recorded testimony and exhibits with the clerk of court of the county in which the municipality is situated, notify the parties concerned of the decisions made,* and when the decision invalidates the election the council shall order a new election as to the parties concerned.

S.C.Code Ann. 5–15–130 (2004) (emphasis added).

The decision of the municipal election commission may be appealed to the court of common pleas within ten days after a party receives notice of it. S.C.Code Ann. 5–15–140 (2004). The circuit court, sitting in an appellate capacity, does not conduct a *de novo* hearing or take testimony. The circuit court must examine the decision for errors of law, but it must accept the factual findings of the commission unless they are wholly unsupported by the evidence. *Blair v. City of Man-*

*ning,* 345 S.C. 141, 546 S.E.2d 649 (2001); *Butler v. Town of Edgefield,* 328 S.C. 238, 248, 493 S.E.2d 838, 843 (1997).

Appellants have not cited, nor have we have found, any South Carolina statute or case establishing standards for written orders issued by an election commission. Appellants initially asserted the Administrative Procedures Act (APA) may apply to such a proceeding. The circuit court correctly recognized the APA does not apply to the appeal of a decision by a municipal election commission. *See* S.C.Code Ann. 1–23–310(2) and (3) (Supp.2003) (defining "agency" and "contested case").

 We affirm the circuit court's ruling the Commission fulfilled its statutory duty under existing law. Section 5–15–130 requires an election commission conduct a hearing, decide the issues raised, file a report with the testimony and exhibits, and notify the parties of the decision. The statute does not require a written order containing findings of fact or conclusions of law similar to those, e.g., required of tribunals in APA or family court proceedings. *Cf.* S.C.Code Ann. 1–23–350 (1986) (establishing standards for written orders in APA cases, which require findings of fact and conclusions of law); Rule 26(a), SCRFC (order or judgment in domestic relations case shall set forth specific findings of fact and conclusions of law). We decline to impose standards for written orders on election commissions beyond those imposed by statute. It is within the plenary power of the Legislature, not this Court, to promulgate election standards or enact statutory election requirements which address the necessity or substance of written orders issued by an election commission.

## 2. SECRECY OF CHALLENGED BALLOTS

Twenty-three voters cast challenged ballots. All were included in the results except the vote of one person who no longer lived in Atlantic Beach. Patricia Bellamy, a poll watcher for unsuccessful mayoral candidate Taylor, challenged most of the ballots due to allegedly questionable addresses.

Poll manager Vanessa Warren stated in a letter to the Commission that challenged voters "were told to write the candidates' names they were voting for on a blank sheet of paper with their signature." Further, the "fail-safe" printed

ballots listing candidates' names were not used "because we were rushing and did not get situated." Warren acknowledged before the Commission the procedures followed were improper. Appellant Sketers stated in his notice of contest the "ballots were allowed to be seen."

Violet Taylor, a witness for Appellant Taylor whose vote was challenged, testified she "was not given a printed ballot to vote on. I was given a blank sheet of paper and I was told to step to the side and write the names of the candidates I was choosing in pencil." Six of the twenty-one challenged ballots contained in the record were signed by the voter.

The Commission rejected the assertion that "ballots were allowed to be seen." Appellants in their notice of appeal to circuit court attacked the challenged ballot procedures. The circuit court ruled Appellants had failed to raise issues related to the challenged ballots to the Commission and rejected Appellants' motions to reconsider the matter or remand it to the Commission.

■ Appellants argue the circuit court erred in affirming the Commission's denial of the election protests because the constitutional and statutory right to a secret ballot of those who voted by challenged ballot was violated. Appellants assert the issues were sufficiently raised to the Commission, although they concede the Commission hearing did not result in an "exemplary record" because they were not then represented by counsel. We conclude the issues are sufficiently preserved.

Respondents argue that the issue of secrecy of the challenged ballots is not preserved for appellate review. They further assert the issue is without merit because it was "not the kind of systemic invasion of privacy that affects the fundamental integrity of the electoral process."

■ "There are two prerequisites to maintaining an election contest in South Carolina: (1) the contest notice must allege irregularities or illegalities; and (2) the alleged irregularities or illegalities must have changed or rendered doubtful the result of the election in the absence of fraud, a constitutional violation, [or] a statute providing that such irregularity or illegality shall invalidate the election." *Butler v. Town of Edgefield*, 328 S.C. 238, 246, 493 S.E.2d 838, 842 (1997).

A notice of contest filed pursuant to Section 5–15–130 should briefly state facts or a combination of facts sufficient to apprise the election commission and winning candidate of the reason for the challenge. It is not sufficient to allege fraud generally or mere conclusions of the protesting person. *Butler*, 328 S.C. at 245–46, 493 S.E.2d at 842. The circuit court, sitting in an appellate capacity, may not consider issues which were not raised to the election commission. The circuit court has no authority to conduct a full hearing when one is denied by the election commission; nor does it have authority to take testimony or conduct a *de novo* hearing. *Butler*, 328 S.C. at 248, 493 S.E.2d at 843; *Blair*, 345 S.C. at 144, 546 S.E.2d at 651.

We recently emphasized the importance of ballot secrecy in *George*, 335 S.C. 182, 516 S.E.2d 206. There we held the total absence of voting booths and foldable ballots in a municipal election violated voters' constitutional and statutory right to cast a secret ballot. We reviewed the occasionally violent nature of past elections and reasons underlying the nation's gradual move toward secret ballots. This Court and many others long have emphasized the importance of secret ballots. *See George*, 335 S.C. at 187–190, 516 S.E.2d at 209–210 (listing cases and statutes); *Corn v. Blackwell*, 191 S.C. 183, 4 S.E.2d 254 (1939) (holding ballot secrecy was violated when numbering system for ballots and voter sign-in lists could be used to identify a particular voter's ballot); *State ex rel. Birchmore v. State Bd. of Canvassers*, 78 S.C. 461, 468–469, 59 S.E. 145, 147 (1907) (holding ballot secrecy was violated when voters were required to place their ballots in "for" and "against" boxes that plainly revealed their choice).

It is undisputed the proper procedure was not followed with regard to the twenty-two challenged ballots. Voters should have been given printed ballots listing the candidates' names after appropriate determinations by the poll manager, been provided with a private place to cast their ballot, and absolutely not been asked or required to sign their name on the ballot. The ballot should have been placed in a separate envelope with the name of the voter and challenger written on the envelope. *See* S.C.Code Ann. § 7–13–830 (Supp.2003) (establishing procedures for handling challenged ballots); *Greene v.*

*S.C. Election Commn.*, 314 S.C. 449, 445 S.E.2d 451 (1994) (discussing challenged ballots); S.C.Code Ann. § 5–15–10 (2004) (municipal elections shall be conducted pursuant to provisions set forth in Title 7).

However, the present case is distinguishable from previous cases addressing ballot secrecy. The secrecy of the six challenged ballots signed by the voter undoubtedly was compromised. The secrecy of the remaining sixteen challenged ballots may have been compromised by the voter "stepping aside" to cast it in potential sight of other voters or poll workers. We agree with Respondents there was no systemic invasion of privacy, as was evident in *George*; *Corn*, and *Birchmore*, which affected the fundamental integrity of the election and gave rise to a constitutional violation sufficient to set aside the election results. We conclude this issue constitutes an irregularity that did not affect the result of the election, and the record does not demonstrate evidence of fraud, a constitutional violation, or a statute providing this irregularity should invalidate the election.

### 3. PRESERVATION OF REMAINING ISSUES

Appellants assert the circuit court erred in affirming the Commission's denial of their election protests because (1) the constitutional and statutory right to a secret ballot of twenty-eight persons who voted by absentee ballot allegedly was violated and (2) the Commission was required by statute to order a new election due to alleged irregularities based on the number of voters who signed the poll list.

These issues are not preserved for appellate review. Appellants failed to raise either issue in their notice of contest letters. *See* footnote 2, *supra*. The issue of absentee ballot secrecy was not raised to the Commission or to the circuit court. Issues related to the signing of the poll list were not raised to the Commission. Appellants *did* allege in their notice of appeal to circuit court that challenged ballot voters had failed to sign the poll list and questioned whether those voters' identities were properly recorded, but their arguments came too late. *See Butler*, 328 S.C. at 248, 493 S.E.2d at 843 (circuit court, sitting in an appellate capacity, may not consider issues which were not raised to the election commission and it has no authority to conduct a full hearing when one is

denied by the election commission; nor does it have authority to take testimony or conduct a *de novo* hearing); *Blair,* 345 S.C. at 144, 546 S.E.2d at 651 (stating same principles).

## CONCLUSION

We affirm the circuit court's order upholding the results of the election held November 4, 2003. We decline to impose standards for written orders issued by election commissions beyond those imposed by statute. We conclude the alleged violation of secrecy of the challenged ballots constitutes an irregularity that did not affect the result of the election. There is no evidence of fraud, a constitutional violation, or a statute providing this irregularity should invalidate the election. Lastly, Appellants remaining issues are not preserved for appellate review because they were not raised to the election commission.

Accordingly, we order that Respondents Irene Armstrong, Jake Evans, and Sherry Suttles, as the winning candidates, be forthwith seated in their respective positions.

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.